SIMINA GENTRY (SBN 232205)
sgentry@centaurilaw.com
STEVEN L. RADER (SBN 189979)
srader@centaurilaw.com
KELLY CHRISTINE RYAN (SBN 317923)
kalbright@centaurilaw.com
**CENTAURI LAW GROUP, P.C.**
15615 Alton Parkway, Suite 175
Irvine, CA  92618
Telephone: (949) 336-5716

Attorneys for Plaintiff
KARMA FAMILY LLC

**U.S. DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KARMA FAMILY LLC; a California Limited Liability Company,<br><br>            Plaintiff<br><br>     vs.<br><br>BRELLABA LLC, a Delaware Limited Liability Company; EMMIE CHANG, an individual; DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.: 8:20-CV-01854<br><br>**COMPLAINT FOR (1) BREACH OF CONTRACT; (2) ANTICIPATORY BREACH (3) MONEY HAD AND RECEIVED; (4) CONCEALMENT; (5) NEGLIGENT MISREPRENTATION; (6) RECEIPT OF STOLEN PROPERTY (PC § 496); (7) FRAUDULENT BUSINESS PRACTICE (BUS. & PROF. CODE § 17200 ET SEQ.); (8) CONVERSION; AND (9) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>**JURY TRIAL DEMANDED**<br><br>Assigned to: |

Plaintiff Karma Family, LLC alleges as follows:

**JURISDICTION AND VENUE**

1.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.  Plaintiff Karma Family LLC is a California limited liability company with a principal place of business in Irvine, County of Orange, California. Each of the defendants are foreign corporations with their principal

places of business located outside California, or are individuals residing in states other than California. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2. Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions upon which the claims for relief are herein alleged, occurred within the Central District of California.

## THE PARTIES

3. Plaintiff is, and at all times herein mentioned was, a California limited liability company, in good standing, with its principal office in Orange County, California.

4. Plaintiff is informed and believes and thereon alleges that Defendant Brellaba LLC is a Delaware Limited Liability Company with its principal office in New York, New York.

5. Plaintiff is informed and believes and thereon alleges that Defendant Emmie Chang is a resident of Brooklyn, New York.

6. Defendants Does 1 through 50, inclusive, are sued herein under fictitious names, their true names and capacities being unknown to Plaintiff. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that plaintiff's damages as herein alleged were proximately caused by such defendants.

7. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the Defendants named herein, including those named as DOE defendants, were the agent, servant, employee, joint venture, and/or partner of the other, and in doing the acts alleged herein, were acting within the course and scope of said agency, employment, joint venture, or partnership.

8. Plaintiff alleges, on information and belief, that by engaging in the conduct described herein, Defendants, and each of them, acted with malice, oppression, and/or fraud, entitling Plaintiff to exemplary and punitive damages.

9. Plaintiff has done all things necessary or required to be done prior to bringing the causes of action herein alleged, save and except where such would prove futile, including, but not

limited to, the exhaustion of any and all contractual or administrative remedies, where applicable.

10. Plaintiff has no plain, speedy, or adequate remedy at law for some or all of the causes of action herein alleged.

## FACTUAL BACKGROUND

11. Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 12, as though fully set forth herein.

12. On May 4, 2020, Plaintiff entered into a contract with third-party Paradigm Clinical Research Institute ("Paradigm") through the website shopping service maintained by third-party Amazon.com, Inc. ("Amazon"), by which Plaintiff would sell to Paradigm 120,000,000 nitrate, latex-free gloves, manufactured to specifications required by Paradigm, and or Amazon, in exchange for a total purchase price of $10,800,000.

13. In order to fulfil its order from Paradigm, Plaintiff entered into a series of three purchase orders with Defendant Brellaba for 40,000,000 gloves per order, totaling the 120,000,000 gloves to be resold to Paradigm at an expected profit to Plaintiff from the sales of $1,644,000.

14. On or about May 13, 2020, Plaintiff entered into a purchase order with Defendant Brellaba for 40,000,000 gloves at a total price of $3,052,000 ("Purchase Order #1). Under the terms of Purchase Order #1, Plaintiff would pay a 50% deposit at order placement and the remainder 50% balance within 24 hours of delivery. As agreed between Plaintiff and Defendants, 20,000,000 gloves were scheduled to arrive within 30 days of the deposit, and the remainder 20,000,000 gloves were scheduled to arrive within 45 days of the deposit. The Purchase Order expressly contemplated future orders on similar terms. Through its statements and actions at the time, Brellaba led Plaintiff to believe that it had the ability to timely deliver the product specified in Purchase Order # 1.

15. On May 14, 2020, Plaintiff wired $1,526,000 to Brellaba as the 50% deposit on Purchase Order #1.

16. On May 21, 2020, Plaintiff entered into a second purchase order with Defendant Brellaba for 40,000,000 gloves at a total price of $3,052,000 (Purchase Order #2). Under the terms of Purchase Order #2, Plaintiff would pay a 50% deposit at order placement and the remainder 50%

balance within 24 hours of delivery. As agreed between Plaintiff and Defendants, 20,000,000 gloves were scheduled to arrive within 30 days of the deposit, and the remainder 20,000,000 gloves were scheduled to arrive within 45 days of the deposit.

17. On May 26, 2020, Plaintiff wired $1,526,000 to Brellaba as the 50% deposit on Purchase Order #2.

18. On June 18, 2020 Defendant Brellaba sent a letter to Karma, representing that the agreed upon delivery schedule would not be met, and offered a series of specious excuses which, even if true, should have constituted matters foreseeable by Defendants when they induced Karma to remit to Brellaba approximately $3,052,000 on deposit. Defendants, without offering Karma additional consideration, in possession and control of a substantial portion of Karma's working capital, and knowing that delayed performance would jeopardize Karma's contractual and economic relationships with third parties, demanded a "modification" of the original agreement: Karma could accept Defendants' unilaterally-imposed delayed delivery schedule or accept a refund of the deposits, without compensation for Karma's consequential damages caused by Brellaba's unexcused failure to timely perform.

19. Karma accepted Defendants' proposed "Option 3" contract modification which included the following terms: the first shipment of gloves would be delivered on July 16, 2020 and Karma would pay $1,526,000 on that date; the second shipment of gloves would be delivered on August 17, 2020, and Karma would pay $1,562,000 on that date; and the third shipment of gloves would be delivered on September 13, 2020, and Karma would pay $1,562,000 on that date. Thus, a new contract was formed between Karma and Brellaba after Brellaba's anticipatory breach of the first agreement.

20. Between June 29, 2020 and August 5, 2020, Defendant Chang, a managing agent of Defendant Brellaba, and Dr. Marmosh, a managing member of Plaintiff Karma, exchanged text messages regarding the status of the pending shipments of the subject gloves. In multiple text messages, Defendant Chang assured Dr. Marmosh that the gloves would be shipped soon. Karma reasonably relied on these assurances by refraining to take action to secure the product from alternative sources until it became impractical for Karma to do so.

21. On June 29, 2020, Dr. Marmosh texted Defendant Chang requesting an update, and said "We need to get the shipments out ASAP as I need to provide them with dates." Dr. Marmosh continued to say "I told them it was going out this week as they were originally supposed to be receiving first shipment today. I need a shipping schedule immediately so I can figure out a way to put out this fire." Defendant Chang responded:, "Yes we will get that to u once we confirm the cargo ready." On June 30, she added: "So, my opinion is to hold off on explaining an actual ship date for another few days. I'll keep u updated."

22. On July 13, 2020, Defendant Chang texted an update to Dr. Marmosh which said, "So, if u want to update amazon, perhaps you can tell them, vglove moq has just gotten HUGE and they are de prioritizing us. Would there be any possibility of them changing brands?"

23. On July 16, 2020, Plaintiff did not receive the gloves as promised by Defendants.

24. On July 16, 2020, Plaintiff wired $1,562,000 to Defendant Brellaba, per the modified agreement.

25. On July 22, 2020, Plaintiff received a third purchase order from Defendant Brellaba whereby Plaintiff ordered 40,000,000 gloves for a purchase price of $3,052,000 (Purchase Order #3).

26. On July 29, Dr. Marmosh, on behalf of Plaintiff, texted Defendant Chang as follows: "I'm having some serious issues with Amazon right now. They have received notice of VRG counterfeit product and that the factor is not fulfilling any orders. We need to have their product out ASAP also need to provide them with bill of Ladings with the full 1.2 million boxes." Defendant Chang responded, "Would they want to take a different brand? That would speed things up." Counterfeit claims are true, and they are very slow in fulfilling product. We are figuring things out. What do u think the chances are of them taking a different factory?" Dr. Marmosh responded, "0% They expect what they were promised."

27. On August 12, 2020, having received no gloves by the dates promised, Plaintiff requested in writing an immediate refund from Defendant Brellaba totaling $4,578,000. At that date, no gloves had been received from Brellaba, and Brellaba had not confirmed the future shipment of any gloves, and no adequate assurances of performance had been tendered by Defendant Brellaba despite Plaintiff's repeated requests.

28. On August 14, 2020 Defendant Brellaba responded to Plaintiff's request for a refund by representing that a full refund would be provided to Karma within 30 days. The letter expressly promised that the refund would be issued by September 14, 2020 and was signed on behalf of Brellaba by Defendant Chang.

29. On September 16, 2020, Defendant Brellaba did not refund the $4,578,000 deposit to Plaintiff, but instead provided a "good faith" payment of $45,780, a mere 1% of the amount owed.

30. On September 16, 2020, Defendant Brellaba sent a letter to Plaintiff admitting the debt owed and alleging there is no formal agreement in place requiring funds to be transferred within a certain timeline, even though Defendant Brellaba sent a signed letter to Plaintiff promising the refund would be distributed by September 14, 2020.

## FIRST CAUSE OF ACTION
### Breach of Contract
### Against Defendant Brellaba

31. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 30, inclusive, of this Complaint.

32. On June 18, 2020 Plaintiff and Defendant entered into a written agreement, which modified previous agreements. The terms of said agreement were as follows: : the first shipment of gloves would be delivered by Brellaba on July 16, 2020 and Karma would pay $1,526,000 on that date; the second shipment of gloves would be delivered by Brellaba on August 17, 2020, and Karma would pay $1,562,000 on that date; and the third shipment of gloves would be delivered by Brellaba on September 13, 2020, and Karma would pay $1,562,000 on that date.

33. Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the contract by paying the 50% deposit on the orders at the times they were placed.

34. On July 16, Defendant breached the contract by failing to deliver 40,000,000 gloves per the delivery schedule stated in the modified agreement.

35. As a result of defendant's breach of the contract, plaintiff has suffered damage in the sum of $1,526,000 in compensatory damages and $548,000 in lost profit.

36. On August 14, 2020 Defendant Brellaba acknowledged Plaintiff's request for a full refund in writing and promised a full refund of $4,578,000 would be made by its own proposed date of September 14, 2020.

37. Defendant Brellaba breached that agreement on September 14, 2020 by failing to refund the money paid in full, and, to this date, refuses to furnish a refund.

**SECOND CAUSE OF ACTION**
**Anticipatory Breach**
**Against Defendant Brellaba**

38. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 37, inclusive, of this Complaint.

39. On or about June 18, 2020 plaintiff and defendant entered into a written agreement, which modified previous agreements.

40. By its terms, the contract provided that the second shipment of 40,000,000 gloves were to be delivered on August 17, 2020.

41. On or about August 12, 2020 Defendant Brellaba, by confirming no gloves had been shipped, gave notice that Defendant Brellaba would not perform the contract, and totally repudiated it. Defendant's repudiation has not been retracted.

42. At the time Plaintiff received Defendant's repudiation, Plaintiff had performed all of the conditions on its part to be done and performed, namely paid the 50% deposit and was ready, able, and willing to pay the remaining 50% upon delivery to complete performance on its part.

43. As a result of Defendant's breach of the contract, Plaintiff has suffered damage in the sum of $1,526,000 in compensatory damages and $548,000 in lost profit.

**THIRD CAUSE OF ACTION**
**Money Had and Received**
**Against Defendant Brellaba**

44. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 43, inclusive, of this Complaint.

45. Between May 16, 2020 and July 16, 2020 Defendant Brellaba became indebted to Plaintiff in the sum of $4,578,000 for money had and received by Defendant Brellaba for the use and

benefit of Plaintiff.

46. Plaintiff has repeatedly demanded repayment from defendant. The last demand was made on September 15, 2020.

47. One payment has been made by defendant to plaintiff, in the amount of $45,780 and there is now owing the sum of $4,532,220, with interest on that amount at the rate of 10% per year from September 14, 2020.

**FOURTH CAUSE OF ACTION**
**Concealment**
**Against All Defendants**

48. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 47, inclusive, of this Complaint.

49. Between June 29, 2020 and August 5, 2020, Defendant Chang exchanged several emails and text messages with Dr. Marmosh in which she made false promises that the gloves would be shipped shortly. Chang knew but did not disclose to Dr. Marmosh facts which would prevent Brellaba's timely performance under the agreements.

50. On August 14, 2020, Defendants Brellaba and Chang sent a letter to Plaintiff wherein they claimed that outside circumstances had prevented Brellaba's performance of the contract including "VRG / VGlove no longer being a financeable partner." The letter also acknowledged that Defendants were aware another brand of glove was not acceptable to fulfil the terms of the contract. The fact that Brellaba could no longer partner with VRG or VGlove was known to Defendants before Plaintiff asked for a refund and before Defendants made false promises to Plaintiff of future timely performance. Defendants suppressed that fact, which made performance of the contract impossible, in order to mislead Plaintiff and did in fact mislead Plaintiff. Plaintiff relied on such false promises and concealments of material facts by failing to timely take steps to cover its losses and obtain the product from an alternative source.

51. The failures to disclose information and suppressions of information herein alleged to have been made by Defendants were made with the intent to induce Plaintiff to not request a refund of the $4,578,000 paid so that Defendants could use Plaintiff's capital to purchase product to fulfill,

at a profit, orders from Brellaba's other accounts.

52. Plaintiff, at the time these failures to disclose and suppressions of facts occurred, and at the time Plaintiff took the actions herein alleged, was ignorant of the existence of the facts that Defendants suppressed and failed to disclose. If the Plaintiff had been aware of the existence of the facts not disclosed by the defendant, the plaintiff would have requested the refund of the $4,578,000 upon learning the information, and would have attempted to obtain the gloves from another source so that Plaintiff could fulfil its order to Amazon as promised. Reliance on Defendants by Plaintiff was justified, as Plaintiff continually requested shipping updates in order to assure the third party that the order would be fulfilled as promised.

53. As a direct, proximate result of Defendants' unlawful and wrongful conduct, Plaintiff sustained economic and compensatory damages, to date totaling $4,532,220 in consideration of the Purchase Agreements and $1,644,000 in lost resale profits to a third party.

54. On information and belief, by engaging in the above conduct, Defendants, and each of them, acted with malice, oppression, and/or fraud, entitling Plaintiff to exemplary and punitive damages in an amount as according to proof at trial.

**FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**Against All Defendants**

55. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 53, inclusive, of this Complaint.

56. On June 18, 2020, Defendants Brellaba and Chang represented that although there were problems in production and logistics delays, they would be able to deliver gloves on a new schedule. The Update Letter stated that, "We have 100% certainty with the data we are presented with as of June 19, 2020 Asia time that these schedules can be delivered."

57. On August 14, 2020 Defendant Brellaba responded Plaintiff's request for a refund by representing that a full refund would be provided to Karma within 30 days. The letter expressly promised that the refund would be issued by September 14, 2020 and is signed by Defendant Chang.

58.     When the defendant made these representations, they had no reasonable ground for believing them to be true. When Plaintiff ultimately requested a refund two months later due to Defendants nonperformance, Defendants cited the same reasons as contained in the Update Letter as their reasons for their inability to perform by the modified delivery schedule. Defendant Brellaba did not refund the $4,578,000 deposit to Plaintiff, but instead provided a "good faith" payment of $45,780, a mere 1% of the amount owed, meaning they have no access to access to any significant portion of the debt owed, and certainly not the amount in its entirety.

59.     The Defendants made these representations with the intention of inducing Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that the plaintiff would so act.

60.     As a direct, proximate result of Defendants' unlawful and wrongful conduct, Plaintiff sustained economic and compensatory damages, to date totaling $4,532,220 in consideration of the Purchase Agreements and $1,644,000 in lost resale profits to a third party.

61.     On information and belief, by engaging in the above conduct, Defendants, and each of them, acted with malice, oppression, and/or fraud, entitling Plaintiff to exemplary and punitive damages in an amount as according to proof at trial.

### SIXTH CAUSE OF ACTION
### Receipt of Stolen Property (PC § 496)
### Against All Defendants

62.     Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 61, inclusive, of this Complaint.

63.     On July 8, 2020 Defendant Chang sent messages to Dr. Marmosh via WhatsApp which said "Kareem, we are making progress. We have 5000 cartons (5M gloves out of the factory in Vietnam and this is our factory holding space). The other 95,000 cartons (95m) are coming this weekend, but at least promise." She included a photograph which purports to show the 50,000 gloves and a video which depicts the boxes, a handwritten sign "Brellaba 7th July 2020," and several workers who are loading the boxes into a truck.

64. On July 15, 2020 Defendant Chang sent an email to Dr. Marmosh with the subject line "ITL airway bill for 50,000 boxes." Attached to the email are three receipts from ITL Air Service for air freight of gloves sent from Vietnam to Los Angeles on July 9, 2020. The Cosignee's name on all three receipts is Brellaba LLC.

65. Defendant Brellaba never furnished the 5,000,000 gloves to Plaintiff.

66. On information and belief, Defendant Brellaba received the 5,000,000 gloves which had been shipped from the Vietnam factory and has sold them to an unknown party.

67. Defendants were aware that these gloves belonged to Plaintiff, as is demonstrated by the emails sent to Dr. Marmosh with proof of the existence and shipment of the gloves.

68. Plaintiff's compensatory damages for the value of 5,000,000 gloves based on the contract price is $76,300.

69. Penal Code § 496(c) entitles Plaintiff to treble damages, costs of suit and reasonable attorney's fees. Plaintiff's damages therefor amount to $228,900, cost of suit and reasonable attorney's fees in an amount as according to proof at trial.

## SEVENTH CAUSE OF ACTION
### Fraudulent Business Practice (Bus. & Prof. Code § 17200 et seq.)
### Against All Defendants

70. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 69, inclusive, of this Complaint.

71. As stated above, Defendant Chang provided proof of the existence and air freight of 5,000,000 gloves. By doing so, Brellaba represented the shipment of gloves would be delivered to Plaintiff.

72. On information and belief, the Defendants received 5,000,000 gloves which were promised to Plaintiff.

73. Defendants never provided the promised gloves to Plaintiff, making the representation that it would do so fraudulent.

74. On information and belief, Defendants sold the gloves to another party at a higher price than the contract price agreed upon by Plaintiff and Defendant Brellaba.

75. On information and belief, Defendants received illicit profits by the above acts.

76. The defendant's acts hereinabove alleged are unlawful, unfair, or fraudulent business acts within the meaning of Business and Professions Code § 17203.

77. Plaintiff has incurred and, during the pendency of this action, will incur expenses for attorney's fees and costs herein.

**EIGHTH CAUSE OF ACTION**
**Conversion**
**Against Defendant Brellaba**

78. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 77, inclusive, of this Complaint.

79. Plaintiff had a right to possess the shipment of 5,000,000 nitrate, latex-free gloves.

80. On information and belief, Brellaba intentionally and substantially interfered with Plaintiff's property by taking possession of the gloves and converting the same to its own use.

81. Plaintiff suffered damages by means of being unable to resell the gloves pursuant to a third-party contract with Paradigm. Plaintiff was damaged in the amount of the value of the gloves and the value of the resale.

82. The defendant's acts alleged above were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

**NINTH CAUSE OF ACTION**
**Negligent Interference with Prospective Economic Relations**
**Against All Defendants**

83. Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1 through 82, inclusive, of this Complaint.

84. Plaintiff and third-party Paradigm were in an economic relationship as is demonstrated by the purchase order for 120,000,000 nitrate, latex-free gloves. The purchase order specifies the contract will repeat for two additional months if the first order meets delivery deadlines.

85. The Paradigm purchase order provides an option to extend under the same terms through the end of 2020 and another option to extend annual for up to the end of 2022 if the orders

were delivered as scheduled, which totals twenty eight deliveries.

86. Plaintiff and Defendant Brellaba entered into a series of three contracts for the same 120,000,000 nitrate, latex-free gloves. with if the first ordered were delivered as scheduled. The purchase order specifies the contract will repeat for two additional months if the first order meets delivery deadlines.

87. The Brellaba purchase order provides an option to extend under the same terms through the end of 2020 and another option to extend annual for up to the end of 2022 if the orders were delivered as scheduled, which totals twenty eight deliveries.

88. Defendant Chang, in her capacity as an agent of Brellaba, and Dr. Marmosh discussed the resale contract with Paradigm for the gloves over text message on several occasions.

89. Defendant Chang, in her capacity as an agent of Brellaba, and Dr. Marmosh discussed the need for updates on shipping times from Brellaba so that Dr. Marmosh could inform Paradigm as to the delivery of the gloves.

90. Defendants were informed that the failure to deliver the gloves as scheduled would result in a canceled contract between Plaintiff and Paradigm.

91. Defendants were negligent in their representations of delivery times and their repeated assurances that the gloves would be delivered shortly.

92. Paradigm canceled its option to renew the contract based on Plaintiff's inability to deliver the initial order of 120,000,000 gloves by the scheduled delivery dates.

93. Defendants negligence was the proximate cause of damages suffered by Plaintiff.

94. Plaintiff was damaged in the amount of the lost profits from the options the extend the contract with Paradigm. Plaintiff's profits are $1,644,000 per order of 120,000,000 gloves. Plaintiff was damaged in the amount of the fully performed option contract of twenty eight deliveries which totals $46,032,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be determined at trial but totaling at least $4,532,220;
2. For consequential damages for lost profits on the Paradigm contract in an amount to be determined at trial but totaling at least $1,644,000;
3. For consequential damages for lost profits on the option to extend the Paradigm contract which totals $46,032,000
4. For treble damages of the contract price for 5,000,000 gloves, totaling $228,900,
5. For interest of 10% from the date of filing this Complaint;
6. For punitive damages, as according to proof at trial, per Cal. Civ. Code § 3294;
7. For disgorgement of illicit profits, as according to proof at trial;
8. For injunctive relief, in the form of immediate delivery of 5,000,000 conforming gloves;
9. For reasonable attorney's fees and costs; and
10. For such other and further relief as the court may deem just and appropriate.

Dated:     9/25/2020                              CENTAURI LAW GROUP, P.C.

By: *Kelly C Ryan*
KELLY C. RYAN
Attorney for Plaintiff
Karma Family LLC